**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| FACTOR2 MULTIMEDIA SYSTEMS, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 6:24-cv-00362-XR |
| | § | |
| v. | § | |
| | § | |
| EARLY WARNING SERVICES, LLC; | § | Complaint Filed:   July 9, 2024 |
| BANK OF AMERICA CORPORATION; | § | |
| TRUIST FINANCIAL CORPORATION; | § | |
| CAPITAL ONE FINANCIAL CORPORATION; | § | |
| JPMORGAN CHASE BANK, N.A.; | § | |
| THE PNC FINANCIAL SERVICES GROUP, INC.; | § | |
| U.S. BANCORP; AND | § | |
| WELLS FARGO & COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**DEFENDANTS' MOTION TO DISMISS
<u>UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 1

    A.    Background Statement of Uncontested Facts ...................................... 1

    B.    The Asserted Patents ......................................................................... 2

        1.    Overview ................................................................................ 2

        2.    The Asserted Claims ............................................................. 4

        3.    The Asserted Patents acknowledge that authentication systems were well-known and otherwise provide minimal detail about the claimed technologies............................................................... 4

    C.    Plaintiff's Litigation Campaign With This Patent Family ..................... 5

        1.    Litigation against the U.S. government ..................................... 5

        2.    Litigation against USAA involving the same patent family that resulted in a Section 101 invalidity judgment............................. 6

LEGAL STANDARD ............................................................................................... 7

ARGUMENT ........................................................................................................... 7

I.      THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE PLAINTIFF IS COLLATERALLY ESTOPPED FROM ASSERTING THE PATENTS AND BECAUSE THE ASSERTED CLAIMS ARE INVALID UNDER SECTION 101 ..................................................................................... 8

    A.    Plaintiff Is Collaterally Estopped From Asserting The Asserted Patents ............. 8

        1.    The Section 101 issue is identical............................................. 9

        2.    The Section 101 issue was fully litigated ................................. 13

        3.    The Section 101 determination was necessary to judgment .................... 13

        4.    There are no special circumstances precluding collateral estoppel ........ 14

    B.    The Claims Of The Asserted Patents Are Invalid Under Section 101................. 14

        1.    The Asserted Claims are directed to an abstract idea ............................ 15

        2.    The Asserted Claims do not contain an inventive concept...................... 23

        3.    The Asserted Patents raise significant preemption concerns................... 26

    C.    The Dependent Claims Do Not Change the Analysis........................................... 26

    D.    The Court Should Dismiss The Complaint With Prejudice Because Amendment Of The Complaint Is Futile ......................................................... 28

Table of Contents
(continued)

Page

II.     AT A MINIMUM, THE INDIRECT- AND WILLFUL-INFRINGEMENT
        CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO
        PLEAD SPECIFIC FACTS THAT DEFENDANTS HAD PRE-EXPIRATION
        KNOWLEDGE ........................................................................................................ 29

CONCLUSION ........................................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Blackberry Ltd.*,
No. W:13-CV-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014).....................................30

*Affinity Labs. of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016)........................................................................................19

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
97 F.4th 1371 (2024).......................................................................................... *passim*

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014)........................................................................................... *passim*

*Amacker v. Renaissance Asset Mgmt. LLC*,
657 F.3d 252 (5th Cir. 2011) ...............................................................................7

*Arunachalam v. Exxon Mobil Corp.*,
No. 6:19-cv-00171-ADA, 2019 WL 10303695 (W.D. Tex. June 26, 2019) ...........................8

*Asghari-Kamrani v. USAA*,
139 S. Ct. 1460 (2019)......................................................................................6, 13

*Asghari-Kamrani v. USAA*,
737 F. App'x 542 (Fed. Cir. 2018) ...................................................................6, 13, 24

*Asghari-Kamrani v. USAA*,
No. 2:15-cv-00478, 2016 WL 3670804 (E.D. Va. July 5, 2016)................................... *passim*

*AstraZeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015)..........................................................................29

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) ....................................................16, 20, 21, 26

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ..............................................................................7

*CardioNet, LLC v. ScottCare Corp.*,
325 F. Supp. 3d 607 (E.D. Pa. 2018) ...................................................................8

*Chamberlain Grp. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019)..........................................................................16

*Colida v. Nokia, Inc.*,
    347 F. App'x 568 (Fed. Cir. 2009) ......................................................................7

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
    986 F.3d 1367 (Fed. Cir. 2021)............................................................................17

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)............................................................................23

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)............................................................................17

*Eolas Techs. Inc. v. Amazon.com, Inc.*,
    No. 2022-1932, 2024 WL 371959 (Fed. Cir. Feb. 1, 2024) .................................26

*Factor2 Multimedia Systems, LCC v. United States*,
    No. 1:24-cv-00475-EDK (Fed. Cl. 2024) ..............................................................6

*GoDaddy.com LLC v. RPost Commc'ns Ltd.*,
    No. CV-14-00126-PHX-JAT, 2016 WL 3165536 (D. Ariz. June 7, 2016),
    *aff'd*, 685 F. App'x 992 (Fed. Cir. 2017).............................................................22

*IBM Corp. v. Zillow Grp.*,
    50 F.4th 1371 (Fed. Cir. 2022) ............................................................................19

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)............................................................................17

*Kirsch Rsch. & Dev., LLC. v. Tarco Specialty Prods., Inc.*,
    No. 6:20-cv-00318-ADA, 2021 WL 4555802 (W.D. Tex. Oct. 4, 2021)...............30

*Marucci Sports, L.L.C. v. NCAA*,
    751 F.3d 368 (5th Cir. 2014) ...............................................................................28

*Miller Mendel Inc. v. City of Anna*,
    107 F.4th 1345 (Fed. Cir. 2024) ..........................................................................15

*Milofsky v. Am. Airlines, Inc.*,
    404 F.3d 338 (5th Cir. 2005) .................................................................................7

*Mobile Acuity Ltd v. Blippar Ltd.*,
    110 F.4th 1280 (Fed. Cir. 2024) ..........................................................................15

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018)............................................................................29

*Network Sys. Techs., LLC v. Qualcomm Inc.*,
    No. 1:22-CV-01331, 2023 WL 11833572 (W.D. Tex. July 21, 2023)...................29

*Ohio Willow Wood Co. v. Alps S., LLC*,
    735 F.3d 1333 (Fed. Cir. 2013)...............................................................................8, 9, 12

*Prism Techs., LLC v. T-Mobile, USA, Inc.*,
    696 F. App'x 1014 (Fed. Cir. 2017) ................................................................................21

*RFC Lenders of Tex., LLC v. Smart Chem. Sols., LLC*,
    No. 6:23-cv-00832-XR (W.D. Tex. Aug. 6, 2024) (Rodriguez, J.)............................15, 19, 26

*Rodriguez v. JPMorgan Chase Bank, N.A.*,
    2016 WL 4507388 (W.D. Tex. Aug. 26, 2016) (Rodriguez, J.) ............................................28

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
    65 F.4th 698 (Fed. Cir. 2023) ..........................................................................................28

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018)........................................................................................15

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)..........................................................................................25

*SimpleAir, Inc. v. Google LLC*,
    884 F.3d 1160 (Fed. Cir. 2018)........................................................................................13

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
    778 F.3d 1311 (Fed. Cir. 2015).........................................................................................8

*StrikeForce Technologies, Inc. v. SecureAuth Corp.*,
    No. LA CV-17-04314, 2017 WL 8808122 (C.D. Cal. Dec. 1, 2017),
    *aff'd*, 753 F. App'x 914 (Fed. Cir. 2019).........................................................................21, 22

*TecSec, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020).................................................................................15, 16, 17

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017).................................................................................17, 18, 25

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
    52 F.4th 1340 (Fed. Cir. 2022) ........................................................................................8, 9

*United States v. Shanbaum*,
    10 F.3d 305 (5th Cir. 1994) ..............................................................................................9

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019).........................................................................................19

*Universal Secure Registry, LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) .........................................................................................20

**Statutes**

35 U.S.C. § 101 ..................................................................................................... *passim*

35 U.S.C. § 271(b) ............................................................................................... 29, 30

35 U.S.C. § 271(c) ............................................................................................... 29, 30

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... *passim*

# TABLE OF ABBREVIATIONS

*Parties*

| Abbreviation | Term |
|---|---|
| Plaintiff | Factor2 Multimedia Systems, LLC |
| Defendants | Early Warning Services LLC; Bank of America Corp.; Truist Financial Corp.; Capital One Financial Corp.: JPMorgan Chase Bank, N.A.; the PNC Financial Services Group, Inc.; U.S. Bancorp; and Wells Fargo & Co. |

*Terms*

| Abbreviation | Term |
|---|---|
| '432 Patent | U.S. Patent No. 8,266,432 |
| '129 Patent | U.S. Patent No. 8,281,129 |
| '938 Patent | U.S. Patent No. 9,703,938 |
| '864 Patent | U.S. Patent No. 9,727,864 |
| '453 Patent | U.S. Patent No. 9,870,453 |
| '285 Patent | U.S. Patent No. 10,083,285 |
| '297 Patent | U.S. Patent No. 10,769,297 |
| Asserted Claims | all claims of the Asserted Patents |
| Asserted Patents | the '129 Patent; the '938 Patent; the '864 Patent; the '453 Patent; the '285 Patent; and the '297 Patent |

*\* All emphasis added throughout, unless otherwise indicated.*

*\* All internal case citations are omitted form citations, unless otherwise indicated.*

## TABLE OF EXHIBITS

| | |
|---|---|
| Exhibit A | '129 Patent Terminal Disclaimer |
| Exhibit B | '938 Patent Terminal Disclaimer |
| Exhibit C | '864 Patent Terminal Disclaimer |
| Exhibit D | '453 Patent Terminal Disclaimer |
| Exhibit E | '285 Patent Terminal Disclaimer |
| Exhibit F | '297 Patent Terminal Disclaimer |
| Exhibit G | Email from Plaintiff's counsel to government's counsel, Dkt. 11-13, *Factor2 Multimedia Systems, LCC v. United States*, No. 1:24-cv-00475-EDK (Fed. Cl. 2024) |

## INTRODUCTION

Plaintiff's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for two distinct reasons that present legal questions properly resolved on the pleadings. First, Plaintiff is collaterally estopped from asserting its claims because parties in privity with Plaintiff asserted materially identical patent claims held invalid under Section 101. *See* Section I.A.1. Specifically, the Eastern District of Virginia held those materially identical claims patent ineligible under Section 101, and the Federal Circuit affirmed that judgment. *See* Section I.A.2. Second, the Asserted Claims in this case are themselves directed to patent-ineligible subject matter under a straightforward application of well-settled Section 101 principles to the Asserted Patents. *See* Section I.B. Plaintiff admits that the '297 Patent is "representative of the family of patents," Dkt. 1 ¶ 34, and it further acknowledges that these claims "are directed to '[a]n authentication system for enhancing computer network security.'" Dkt. 1 ¶ 34. Such an "authentication system" is no more than the abstract idea of using (i) a third party and (ii) a single-use, time-sensitive code to confirm the identity of a party to authenticate a transaction. The claims add nothing inventive to this abstract idea. *See* Section I.B.2. Finally, Plaintiff's claims for indirect and willful infringement are not plausibly alleged and should be dismissed because the Asserted Patents have expired, and Plaintiff alleges no pre-suit knowledge. *See* Section II.

## BACKGROUND

### A.    Background Statement of Uncontested Facts

Plaintiff filed its Complaint on July 9, 2024, accusing Defendants, a collection of banks and a technology company,[1] of direct, indirect, and willful infringement of all claims of the

---

[1] Early Warning Services, LLC ("EWS") notes it is not properly subject to venue in this Court, as it does not have an office at the address listed in the complaint (Dkt. 1 at ¶ 15) or elsewhere in this District. However, EWS is not moving to dismiss on that ground in the interest of efficient resolution of this case.

Asserted Patents. Dkt 1 ¶¶ 165-881 (counts 1-144). Plaintiff alleges that each Defendant independently infringes the Asserted Claims via their use of what Plaintiff calls the "Zelle System," their individual websites, and their mobile banking applications. *See id.*

Plaintiff admits that "[e]ach of the Patents-in-Suit is a member of the same patent family" and that "[t]he claims of the '297 Patent are representative of the family of patents." Dkt. 1 ¶¶ 33-34. Plaintiff further acknowledges that the "[m]ethod claims of the '129 Patent are also representative of the method claims of the Patents-in-suit." *Id.* ¶ 35. Because Plaintiff admits that the '297 Patent is representative, and because the claims of the '297 Patent are materially identical to the method claims of the '129 Patent, *see infra* Section I.A.1, Defendants do not contest these facts for purposes of this motion, and focus this motion on the '297 Patent. Dkt. 1-6.

## B.    The Asserted Patents

### 1.    Overview

All Asserted Patents are part of the same patent family.[2] The patent family includes the '432 Patent, which was held invalid as directed to patent-ineligible subject matter in separate litigation resulting in a final judgment. *See infra* Section C.2. Each Asserted Patent is terminally disclaimed over the '432 Patent, meaning that each patent expired on the same date. Exs. A-F.[3]

The representative '297 Patent relates to "a centralized identification and authentication system and method for identifying an individual over a communication network such as [the] Internet, to increase security in e-commerce," involving the "generation of a dynamic, non-predictable and time dependent SecureCode for the purpose of positively identifying an individual." '297 Patent, 1:30-36.

---

[2] The '864 Patent contains substantially the same written description as the '297 Patent, and the '938, '453, and '258 Patents contain substantially the same written description as the '129 Patent.
[3] The '297 Patent is not terminally disclaimed over the '432 Patent, but it is terminally disclaimed over the '453 Patent, which is itself terminally disclaimed over the '432 Patent. Exs. D, F.

The '297 Patent purports to describe the verification of a transaction using an authentication code. *Id.* at 4:59-67. In the parlance of the '297 Patent, the transactions involve a Central-Entity, a user, and an External-Entity. A "Central-Entity" is a trusted institution, which includes "banks, credit card issuing companies or any intermediary service companies" that have a user's personal and/or financial information. *Id.* at 2:24-29. A user is a person or a business that "needs to be identified in order to make online purchases or to get access to … restricted websites." *Id.* at 3:9-13. "An External-Entity is any party offering goods or services in e-commerce and needs to authenticate the users based on digital identity." *Id.* at 3:17-19.

According to the '297 Patent, when users "attempt[] to access a restricted web site or attempt[] to buy services or products," the External-Entity begins the authorization process and requests that the users authenticate their identity. *Id.* at 5:21-29. A user then requests a code, which the '297 Patent calls a "SecureCode," from the Central-Entity, and the Central-Entity generates the code, and provides the code to the user. *Id.* at 5:29-36. A SecureCode may be "any dynamic, non-predictable and time dependent alphanumeric code, secret code, PIN or other code, which may be broadcast to the user over a communication network, and may be used as part of a digital identity to identify a user as an authorized user." *Id.* at 2:47-52. The user then provides that code to the External-Entity, along with any other required information. *Id.* at 5:36-39. The Central-Entity then receives a request from the External-Entity to authenticate the user based on the user's information and the code. *Id.* at 5:40-52. "If both digital identities match, the Central-Entity 30 will identify the user 10 and will send an approval of the identification and authorization request to the External-Entity 20…" *Id.* at 5:52-55. If the digital identities do not

match, the Central-Entity "will send a denial." *Id.* at 5:55-57.[4]

### 2.    The Asserted Claims

Plaintiff asserts every claim of the Asserted Patents against each of the Defendants. Dkt. 1

¶¶ 165-81. Plaintiff admits that the '297 Patent is representative of the Asserted Patents. *Id.* ¶ 34.

Claim 1 of the '297 Patent recites:

> 1.  An authentication system for enhancing computer network security by authenticating a user in an electronic communication between a computing device of the user and an online computer system, the authentication system comprising one or more computing devices configured to perform operations comprising:
>> while the online computer system is connected to the computing device of the user via a communication network, electronically receiving a request for a SecureCode;
>> generating the SecureCode;
>> while the online computer system is connected to the computing device of the user via the communication network, electronically providing to the user the SecureCode in response to the request for the SecureCode, wherein:
>> the SecureCode is invalid after a predetermined time passes,
>> the SecureCode is invalid after one use of the SecureCode for authentication, and
>> the SecureCode is only valid for authenticating the user; and
>> while the online computer system is connected to the computing device of the user via the communication network, electronically receiving from the online computer system a digital authentication request for authenticating the user, wherein:
>> the digital authentication request comprises a digital identity of the user, and
>> the digital identity includes the SecureCode; and
>> while the online computer system is connected to the computing device of the user via the communication network, authenticating the user by evaluating a validity of the SecureCode included in the digital authentication request.

*Id.* at 6:44-7:11.

### 3.    The Asserted Patents acknowledge that authentication systems were well-known and otherwise provide minimal detail about the claimed technologies

The Asserted Patents recognize that authentication systems were already well-known and

---

[4] The '129 Patent recites the same concepts, but instead of a "Central-Entity" it recites the term "trusted-authenticator." '129 Patent, 7:59-8:3; 8:12-22; 9:23-49. Similarly, instead of the "External-Entity," the '129 Patent uses the term "entity/business." *Id.* at 8:45-58.

conventional. For example, the representative '297 Patent explains that the prior art "provide[d] for remote authentication using a one-time password scheme having a secure out-of-band channel for initial password delivery." *Id.* at 1:51-56. Similarly, the patent acknowledges that other prior art disclosed "trusted third-party" authentication systems "via an online brokering service, eliminating the need for service providers to provide these services." *Id.* at 1:57-65.

The Asserted Patents provide little to no detail on how the claimed functionalities are performed. For example, in the '297 Patent, neither the claims nor the specification provide any detail about how the claimed systems and methods generate the code used for transactions. The claims and specification similarly do not discuss any new hardware, software, or other computer technology for performing the claimed functions. And there is no disclosure in the claims or the specification relating to any specific technological implementation or improvement in authenticating transactions.

Rather, the representative '297 Patent demonstrates that the claims merely utilize the functionality of existing technology and well-known, routine, and conventional components to perform the functions recited in the claims and disclosed in the specification. The '297 Patent emphasizes that its invention is "***simple for businesses to adopt***" because it "***doesn't require the financial institutions to change their existing systems***." *Id.* at 2:10-12. And that the claimed transactions are performed "through a ***standard interface***" that is "***similar to what exists today***." *Id.* at 5:23-25.

### C.    Plaintiff's Litigation Campaign With This Patent Family

#### 1.    Litigation against the U.S. government

This litigation—against seven banks and a technology company—is the latest in Plaintiff's campaign with this patent family. Beyond this lawsuit, Plaintiff asserted the same six patents against the U.S. government in the Court of Federal Claims in what appears to be a nearly identical

complaint. *See Factor2 Multimedia Systems, LCC v. United States*, No. 1:24-cv-00475-EDK (Fed. Cl. 2024) at Dkt. 1. The government moved to dismiss that complaint on collateral estoppel and Section 101 grounds. *Id.* at Dkt. 11. The motion is fully briefed. *See id.*; Dkts. 14, 15.

### 2. Litigation against USAA involving the same patent family that resulted in a Section 101 invalidity judgment

In 2018, parties in privity with Plaintiff (*see infra* Section I.A.4) asserted the '432 Patent against USAA, a bank that Plaintiff did not sue here. *Asghari-Kamrani v. USAA*, No. 2:15-cv-00478, 2016 WL 3670804 (E.D. Va. July 5, 2016). The '432 Patent is a member of the patent family that Plaintiff admits is represented by the '297 Patent. *See* Dkt. 1 ¶¶ 33-34. USAA moved to dismiss on Section 101 grounds. *Id.* at *1. The district court held the claims of the '432 Patent "invalid because they [were] directed to an abstract idea and thus ineligible for patent protection under 35 U.S.C. § 101" and dismissed the complaint with prejudice. *Id.* at *6. The district court explained that "[c]laim 1 of the patent, which [was] representative, claims a 'method for authenticating a user during an electronic transaction.'" *Id.* at *4. But "despite the electronic setting and purportedly Internet specific problem addressed," it found that the claims related to "a common method for solving an old problem" and were "directed to the abstract idea of using a third party and a random, time-sensitive code to confirm the identity of a participant to a transaction." *Id.* Because "there [was] nothing inventive about Plaintiffs' patent claims," the claims were thus held ineligible under Section 101. *Id.* at *6.

The plaintiffs appealed that invalidity judgment, and the Federal Circuit summarily affirmed. *Asghari-Kamrani v. USAA*, 737 F. App'x 542, 542 (Fed. Cir. 2018). The plaintiffs then petitioned for writ of certiorari, which the Supreme Court denied, rendering the Section 101 invalidity judgment completely final. *Asghari-Kamrani v. USAA*, 139 S. Ct. 1460, 1460 (2019).

## LEGAL STANDARD

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege sufficient facts that, taken as true, state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). Courts are not required to accept as true "conclusory allegations or unwarranted deductions of fact." *Milofsky v. Am. Airlines, Inc.*, 404 F.3d 338, 341 (5th Cir. 2005). Rather, "the complaint must have sufficient 'facial plausibility' to 'allow[] the court to draw the reasonable inference that the defendant is liable.'" *Colida v. Nokia, Inc.*, 347 F. App'x 568, 570 (Fed. Cir. 2009). And "[t]he plaintiff's factual allegations must raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible." *Id.* "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).

## ARGUMENT

The Complaint should be dismissed with prejudice for two independent and equally meritorious reasons. First, collateral estoppel bars Plaintiff's claims against Defendants. The claims of the Asserted Patents here are substantially identical to claims previously asserted in a separate litigation by parties in privity with Plaintiff. Those claims were held invalid as patent ineligible under Section 101. That litigation resulted in final judgment and is binding on Plaintiff. Second, like the earlier asserted, substantially identical claims, the Asserted Claims here are patent ineligible under Section 101. They are directed to the same abstract idea and provide no inventive concept. Whether for collateral estoppel or subject-matter ineligibility, the same result is compelled: dismissal. And this dismissal should be with prejudice because any amendment of the Complaint by Plaintiff would be futile.

Even putting those fatal flaws to the side, the Court should, at a minimum, dismiss

Plaintiff's indirect- and willful-infringement claims. Plaintiff fails to allege that the Defendants each had knowledge of the Asserted Patents prior to their expiration. Such prior knowledge is required to sustain any and all of Plaintiff's claims of indirect infringement and willfulness.

I.      **THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE PLAINTIFF IS COLLATERALLY ESTOPPED FROM ASSERTING THE PATENTS AND BECAUSE THE ASSERTED CLAIMS ARE INVALID UNDER SECTION 101**

A.      **Plaintiff Is Collaterally Estopped From Asserting The Asserted Patents**

"Collateral estoppel protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). Under this doctrine, "once the claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party who is sued for infringement … may reap the benefit of the invalidity decision." *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1315 (Fed. Cir. 2015). Collateral estoppel is applied at the pleading stage. *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1345-50 (Fed. Cir. 2022) (affirming dismissal on collateral-estoppel grounds). Indeed, the doctrine has been applied at the pleading stage numerous times for prior invalidity judgments—including ineligibility under Section 101. *CardioNet, LLC v. ScottCare Corp.*, 325 F. Supp. 3d 607, 613 (E.D. Pa. 2018) (dismissing complaint based on collateral estoppel given prior Section 101 judgment); *Arunachalam v. Exxon Mobil Corp.*, No. 6:19-cv-00171-ADA, 2019 WL 10303695, at *4 (W.D. Tex. June 26, 2019) (applying collateral estoppel from earlier indefiniteness judgment).

Collateral estoppel is not limited "to patent claims that are identical. Rather, it is the identity of the ***issues*** that were litigated" that matters. *Ohio Willow*, 735 F.3d at 1342 (emphasis original). Thus, "[i]f the differences between the unadjudicated patent claims and adjudicated patent claims

do not materially alter the question of invalidity, collateral estoppel applies." *Id.*

The doctrine is "generally guided by regional circuit precedent," though Federal Circuit precedent applies to "those aspects of a determination that involve substantive issues of patent law." *Id.* The Fifth Circuit recognizes four requirements for collateral estoppel to apply:

> First, the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action. Second, the issue must have been fully and vigorously litigated in the prior action. Third, the issue must have been necessary to support the judgment in the prior case. Fourth, there must be no special circumstance that would render preclusion inappropriate or unfair.

*United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994). "The party against whom preclusion is asserted must also have been a party or been in privity with a party to the prior adjudication." *Uniloc*, 52 F.4th at 1346 n.4.

Each requirement of collateral estoppel is met here. Parties in privity with Plaintiff previously asserted the '432 Patent in *Asghari-Kamrani v. USAA*, resulting in a final judgment of invalidity under Section 101. The claims of the '432 Patent are materially identical to the claims of the representative '297 Patent. The Section 101 invalidity judgment in *USAA* compels dismissal here.

### 1.     The Section 101 issue is identical

The Section 101 subject-matter ineligibility issue is the same here as it was in *USAA*. *USAA* involved claims from the '432 Patent that are substantially identical to the claims of the representative '297 Patent. *See Ohio Willow*, 735 F.3d at 1342; Dkt. 1 ¶¶ 34-35. Both the '432 and '297 Patents are directed to the same core concept: "using a third party and a random, time-sensitive code to confirm the identity of a participant to a transaction." *USAA*, 2016 WL 3670804, at *4. The table below illustrate the material identity between the claims:[5]

---

[5] This emphasis is exemplary only. Certain claim language for the '432 Patent has been reordered for the purposes of this illustration.

| '297 Patent, Claim 1 | '432 Patent, Claim 1 (Invalidated) |
|---|---|
| An authentication system for enhancing computer network security by _authenticating a user in an electronic communication between a computing device of the user and an online computer system_, the authentication system comprising one or more computing devices configured to perform operations comprising: | A method for _authenticating a user during an electronic transaction between the user and an external-entity_, the method comprising: |
| while the online computer system is connected to the computing device of the user via a communication network, _electronically receiving a request for a SecureCode_; | _receiving electronically a request for a dynamic code_ for the user by a computer associated with a central-entity during the transaction between the user and the external-entity; |
| _generating the SecureCode_; | _generating_ by the central-entity during the transaction _a dynamic code_ for the user in response to the request, |
| while the online computer system is connected to the computing device of the user via the communication network, _electronically providing to the user the SecureCode_ in response to the request for the SecureCode, wherein: | _providing_ by the computer associated with the central-entity _said generated dynamic code to the user_ during the transaction; |
| _the SecureCode is invalid after a predetermined time passes_, | wherein _the dynamic code is valid for a predefined time_ and |
| the _SecureCode is invalid after one use_ of the SecureCode for authentication, and | _becomes invalid after being used_; |
| _the SecureCode is only valid for authenticating the user_; and | receiving electronically by the central-entity a request for authenticating the user from a computer associated with the external-entity _based on a user-specific information and the dynamic code as a digital identity_ |
| while the online computer system is connected to the computing device of the user via the communication network, _electronically receiving from the online computer system a digital authentication request for authenticating the use_r, wherein: | _receiving electronically_ by the central-entity _a request for authenticating the user from a computer associated with the external-entity_ |

| '297 Patent, Claim 1 | '432 Patent, Claim 1 (Invalidated) |
|---|---|
| _the digital authentication request comprises a digital identity of the user_, and | receiving electronically by the central-entity _a request for authenticating the user_ from a computer associated with the external-entity _based on a user-specific information and the dynamic code as a digital identity_ included in the request |
| the _digital identity includes the SecureCode_; and | based on a _user-specific information and the dynamic code as a digital identity_ |
| while the online computer system is connected to the computing device of the user via the communication network, _authenticating the user by evaluating a validity of the SecureCode_ included in the digital authentication request. | _based on a user-specific information and the dynamic code as a digital identity_ included in the request which said dynamic code was received by the user during the transaction and was provided to the external-entity by the user during the transaction; and _authenticating by the central-entity the user_ and providing a result of the authenticating to the external-entity during the transaction _if the digital identity is valid_. |

The same is true for the method claims of the '129 Patent that Plaintiff admits are representative of the method claims of the Asserted Patents:

| '129 Patent, Claim 1 | '432 Patent, Claim 1 (Invalidated) |
|---|---|
| A computer implemented method to _authenticate an individual in communication with an entity over a communication network during a communication between the entity and the individual_, the computer implemented method comprising: | A method for _authenticating a user during an electronic transaction between the user and an external-entity_, the method comprising: |
| _receiving electronically a request for a dynamic code for the individual, which request is received_ from the individual by a trusted-authenticator's computer _during an authentication of the individual by the entity_; | _receiving electronically a request for a dynamic code for the user_ by a computer associated with a central-entity _during the transaction between the user and the external-entity_; |
| _calculating_ by the trusted-authenticator's computer the _dynamic code_ for the individual _in response to the request_ _during the authentication_ of the individual by the entity, | _generating_ by the central-entity _during the transaction_ a _dynamic code_ for the user _in response to the request_, |
| _wherein the dynamic code is valid for a_ | _wherein the dynamic code is valid for a_ |

| '129 Patent, Claim 1 | '432 Patent, Claim 1 (Invalidated) |
|---|---|
| *predefined time and becomes invalid after being used*; | *predefined time and becomes invalid after being used*; |
| *sending* by the *trusted-authenticator's computer* electronically the *dynamic code to the individual during the authentication* of the individual by the entity; | *providing* by the *computer associated with the central-entity* said generated *dynamic code to the user during the transaction*; |
| *receiving* by the trusted-authenticator's computer electronically *an authentication request from the entity* to authenticate the individual *based on a user information and the dynamic code* included in the authentication request, | *receiving* electronically by the central-entity *a request for authenticating the user from a computer associated with the external-entity based on a user-specific information and the dynamic code* as a digital identity included in the request |
| wherein the *entity receives* *the user information and the dynamic code from the individual*; and | which said *dynamic code* was *received by the user* during the transaction and was *provided to the external-entity* by the user during the transaction; and |
| *authenticating by the trusted-authenticator's computer an identity of the individual* based on the user information and the dynamic code included in the authentication request, | *authenticating by the central-entity the user* and |
| wherein the *result* of the authentication is *provided to the entity*. | *providing a result* of the authenticating *to the external-entity* during the transaction if the digital identity is valid. |

"As reflected in the claim language above, these patents use slightly different language to describe substantially the same invention." *Ohio Willow*, 735 F.3d at 1342. "[T]he mere use of different words in these portions of the claims does not create a new issue of invalidity." *Id.* at 1343. For example, the representative '297 Patent states that the transaction is with "an online computer system," which corresponds to the "central-entity" and "external-entity" in claim 1 of the '432 Patent. Similarly, the '129 Patent states that the authentication during a communication between "an individual" and "an entity" is facilitated by a "trusted-authenticator," which corresponds to the "user," "external-entity," and "central-entity." The "central-entity" and "external-entity" of claim 1 of the '432 Patent perform the same functions in the claims as the

"online computer system" and the "trusted-authenticator" and "entity" of the '297 Patent. And the '297 Patent's "SecureCode" and the '129 Patent's "dynamic code" are the same as the "dynamic code" in claim 1 of the '432 Patent.

Beyond these clear parallels, the shared terminal disclaimer of the Asserted Patents is "very relevant" to "the issue of claim preclusion here." *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1167-68 (Fed. Cir. 2018). "Although a terminal disclaimer does not conclusively show that a child patent involves the same cause of action as its parent," it "is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent." *Id.* at 1168. During prosecution, the named inventors disclaimed each of the Asserted Patents over the '432 Patent, which was rendered invalid in the *USAA* judgment. *See* Exs. A-F. The terminal disclaimers are further evidence that the Asserted Claims are patentably indistinct from the previously litigated claims of the '432 Patent.

Given the materially identical claims of the representative '297 Patent and the '432 Patent, as well as the terminal disclaimers, the Section 101 issue here is identical to the Section 101 issue in *USAA* that resulted in final judgment of invalidity.

### 2. The Section 101 issue was fully litigated

The patent-ineligibility issue was fully litigated in *USAA*. The claims of the '432 Patent were held invalid under Section 101 by the Eastern District of Virginia in *USAA*, which resulted in final judgment. 2016 WL 11642758, at *1. The plaintiff appealed to the Federal Circuit, which affirmed the district court's invalidity judgment. 737 F. App'x at 542. The *USAA* plaintiffs then petitioned for writ of certiorari, which the Supreme Court denied. *See* 139 S. Ct. at 1460. Thus, the Section 101 issue was fully litigated through final judgment.

### 3. The Section 101 determination was necessary to judgment

The Section 101 holding was necessary to judgment in *USAA*. The issue of patent

ineligibility was the sole issue the district court ruled on in dismissing the plaintiffs' claims. *USAA*, 2016 WL 3670804, at *1. The court subsequently entered judgment of invalidity after granting the motion. *See USAA*, 2016 WL 11642758, at *1.

### 4.     There are no special circumstances precluding collateral estoppel

There are no special circumstances rendering preclusion inappropriate or unfair. Plaintiff has admitted that there is privity between it and the plaintiffs in *USAA*. In a letter to defense counsel in its case against the United States, Plaintiff's counsel admitted "the original inventors / owners of the patent are the sole owners of interest in [Factor2] and in the intermediary LLC, Ameritech. Thus, although technically assigned, the true party in interest remains the same as the original owner of record," i.e., the plaintiffs from *USAA*. Ex. G (Dkt. 11-13, No. 1:24-cv-00475-RMM, (Fed. Cl. Aug. 21, 2024) (email from Plaintiff's counsel Joseph Zito to government's counsel)). Accordingly, not only was the issue of patent eligibility fully litigated in *USAA*, but Plaintiff itself (through its owners, the true party in interest) had a full and fair opportunity to participate in that litigation. Application of collateral estoppel is thus appropriate and fair.

*     *     *

Collateral estoppel applies and bars Plaintiff's claims of infringement against Defendants. The Court should dismiss the Complaint.

### B.     The Claims Of The Asserted Patents Are Invalid Under Section 101

Independent of collateral estoppel, the Court should dismiss the Complaint because the Asserted Claims are directed to patent ineligible subject matter under Section 101.

The Supreme Court has articulated a two-step test to determine whether a patent claims ineligible subject matter. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014). First, the court evaluates "whether a claim is directed to a patent-ineligible concept like an abstract idea." *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1377 (2024). "If the answer is

no, then the inquiry ends. But if the answer is yes, the inquiry proceeds to the second step." *Id.*

Second, the court determines "whether the claim recites elements sufficient to transform it into a

patent-eligible application." *Id.* If not, the claim is invalid.

"[I]t is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule

12(b)(6) motion." *Mobile Acuity Ltd v. Blippar Ltd.*, 110 F.4th 1280, 1289-90 (Fed. Cir. 2024);

Dkt. 30, *RFC Lenders of Tex., LLC v. Smart Chem. Sols., LLC*, No. 6:23-cv-00832-XR (W.D. Tex.

Aug. 6, 2024) (Rodriguez, J.) (dismissing case with prejudice after determining asserted patent

was directed to an abstract idea). Such a determination may be made at the pleading stage "where

the undisputed facts," applying Rule 12(b)(6)'s standards, "require a holding of ineligibility." *SAP

Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

Again, Plaintiff admits that "[t]he claims of the '297 Patent is representative" of all the

Asserted Patents.[6] Dkt. 1 ¶ 34. Within the '297 Patent, claim 1 and its dependent claims (2-9) are

representative of all other claims. The other independent and dependent claims mirror these claims

with minor, non-material variations. *See* Section I.C. As a result, claims 1-9 of the '297 Patent are

representative of all claims of the Asserted Patents.

### 1.    The Asserted Claims are directed to an abstract idea

*Alice* step one analyzes "the character of the claims as a whole to determine whether they

are 'directed to' patent-ineligible subject matter," such as an abstract idea. *AI Visualize*, 97 F.4th

at 1378. The "directed to" inquiry focuses on the claim language in light of the specification. *See,

e.g.*, *Miller Mendel Inc. v. City of Anna*, 107 F.4th 1345, 1352-53 (Fed. Cir. 2024). For software

inventions, patent-eligible claims must capture "a 'specific' improvement in computer

---

[6] Plaintiff further alleges that the "[m]ethod claims of the '129 Patent are also representative of
the method claims" of the Asserted Patents. Dkt. 1 ¶ 35. The method claims of the '129 Patent
are materially identical to the claims of the '297 Patent. *See supra* Section I.A.1. As a result, the
Section 101 analysis focuses on the claims of the '297 Patent.

capabilities," rather than recite "an abstract idea" that uses a computer "invoked merely as a tool." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020). When claims simply recite "a desirable result or function," they are directed to a patent-ineligible abstract idea. *Id.* In performing the "directed to" analysis, "earlier cases in which a similar or parallel descriptive nature can be seen" inform whether a claim covers an abstract idea. *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346-47 (Fed. Cir. 2019).

Plaintiff alleges that the '297 Patent claims "are directed to '[a]n authentication system for enhancing computer network security.'" Dkt. 1 ¶ 34. The "authentication system" of the claims is merely the abstract idea of using (i) a third party and (ii) a single-use, time-sensitive code to confirm the identity of a party to authenticate a transaction.

The Asserted Claims "exhibit several features that are well-settled indicators of abstractness." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024). <u>First</u>, the Asserted Claims do not focus on a specific technical problem arising in the realm of computers, nor do they recite any specific technical improvement. <u>Second</u>, the Asserted Claims "broadly recite[] generic steps" and are "drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results." *Id.* <u>Third</u>, they are similar "to longstanding 'real-world' ('brick and mortar') activities." *Id.* <u>Fourth</u>, the Federal Circuit and other district courts have repeatedly found similar claims patent ineligible in other cases—including claims from the same patent family at issue here.

> **(a)**   **The claims do not recite any improvement to underlying computer technology**

Nothing in the claims provides for any improved tools or techniques by which a transaction is authenticated by a third party or a single-use, time-sensitive code. The claims and specification fail to identify "a specific improvement in computer capabilities or network functionality." *TecSec*,

978 F.3d 1293. Instead, the claims capture "a desirable result or function." *Id.*

The claims of the Asserted Patents also do not use any new hardware, software, or other computer technology for performing the claimed functions. "Steps that do nothing more than spell out what it means to 'apply it on a computer' cannot confer patent-eligibility." *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) (quoting *Alice*, 134 S. Ct. at 2359). Indeed, claims are patent ineligible and "cannot be directed to a technological solution" when "the claims solve [the] purported problem by applying an abstract idea using conventional techniques specified in functional terms and at a high degree of generality" and where "the claims provide no useful guidance as to how this purported function is achieved." *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1378 (Fed. Cir. 2021).

> **(b)** **The Asserted Claims recite the functional results of authenticating a transaction via a third party and with a single-use, time-sensitive code**

The Asserted Claims recite the generic result of authenticating a transaction using a third party and a single-use, time-sensitive code "that itself is the abstract idea." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). The "result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016)

The claims recite the steps of requesting, generating, providing, receiving, and authenticating. These limitations are "drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results." *Betiero*, 104, F.4th at 1356.

This failure is replete in the claims. The emphasis added to claim 1 below shows that each limitation simply recites functional, result-oriented language:

> 1. An authentication system for enhancing computer network security by

authenticating a user in an electronic communication between a computing device of the user and an online computer system, the authentication system comprising one or more computing devices configured to perform operations comprising:

> while the online computer system is connected to the computing device of the user via a communication network, ***electronically receiving a request for a SecureCode***;
> ***generating the SecureCode***;
> while the online computer system is connected to the computing device of the user via the communication network, ***electronically providing to the user the SecureCode in response to the request for the SecureCode***, wherein:
>> the SecureCode is invalid after a predetermined time passes,
>> the SecureCode is invalid after one use of the SecureCode for authentication, and
>> the SecureCode is only valid for authenticating the user; and
> while the online computer system is connected to the computing device of the user via the communication network, ***electronically receiving from the online computer system a digital authentication request for authenticating the user***, wherein:
>> the digital authentication request comprises a digital identity of the user, and
>> the digital identity includes the SecureCode; and
> while the online computer system is connected to the computing device of the user via the communication network, ***authenticating the user by evaluating a validity of the SecureCode included in the digital authentication request***.

Dependent claims 2 and 3 follow the same pattern, reciting generalized results without "sufficiently describ[ing] how to achieve these results in a non-abstract way." *Two-Way*, 874 F.3d at 1337.

> 2. The authentication system of claim 1, wherein the evaluating the validity comprises:
> ***determining that the SecureCode included in the digital authentication request is used before the predefined time passes***; and
> ***determining that the SecureCode is used for a first time***.

> 3. The authentication system of claim 2, wherein the operations further include:
> while the online computer system is connected to the computing device of the user via the communication network, ***electronically transmitting a digital user authentication response message to the online computer system***, the digital user authentication response message indicating that the user is authenticated.

The other dependent claims do not alter the fundamental abstract character of the alleged invention. Claim 4 states that the operations occur in real-time. Claim 5 specifies that restricted

information is accessed. Claim 6 limits the environment to accessing a restricted-access website. Claim 7 specifies that the online account of a user is accessed. Claim 8 adds additional parameters to the "SecureCode." Claim 9 specifies that the digital identity further comprises user-identifying information. None of the dependent claims changes the abstract nature of the claimed idea. Instead, the additional parameters relate to other generic steps for accomplishing the idea or "merely limit[] the field of use of the abstract idea to a particular existing technological environment," which "does not render the claims any less abstract." *Affinity Labs. of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016).

The claims "are written in 'result-based functional language' that 'does not sufficiently describe how to achieve these results in a non-abstract way.'" *IBM Corp. v. Zillow Grp.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022). And "[t]he claims and specification do not disclose a technical improvement or otherwise suggest that one was achieved." *Id.* The Asserted Patents are directed to an ineligible abstract idea.

> **(c)** **The Asserted Claims are similar to longstanding "real-world" activities**

The abstract idea of using a third party and a random, time-sensitive code to confirm the identity of a participant to a transaction is not a new concept. The claims "seek[] to automate 'pen and paper methodologies' to conserve human resources and minimize errors," making them "quintessential 'do it on a computer'" claims that the Federal Circuit has held "are directed to abstract ideas." *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019); Dkt. 30 at 11-12, *RFC Lenders* ("[W]here a process 'is pervasive in human activity' and 'can be performed in the human mind, or by a human using a pen and paper,' the Federal Circuit has repeatedly found such a process unpatentable.").

Here, the abstract idea of using a third party and a random, time-sensitive code to confirm

the identity of a participant to a transaction could be performed using mail, telephone, or other means of communication without a computer or the internet. Indeed, as the *USAA* district court recognized when analyzing the substantially identical claims of the '432 Patent, "the concept could easily be performed either by hand or, more simply, with technologies much older than computers." 2016 WL 3670804, at *4. The claims are unpatentable.

        **(d)**     **The Asserted Claims are analogous to those in other cases that were held to be ineligible**

There are "several precedents in which" the Federal Circuit and other district courts "have concluded that the broadly analogous claims … [are] abstract." *Beteiro*, 104 F.4th at 1356.

In *Universal Secure Registry, LLC v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021), the Federal Circuit held "the claimed idea of using three or more conventional authentication techniques to achieve a higher degree of security" to be abstract. *Id.* at 1357. The claims there recited "authenticating a user based on secret information, authenticating the user based on a first biometric information, and generating one or more signals including first authentication information, an indicator of biometric authentication of the user of the first device, and a time varying value to send to a second device, where the second device will then generate an enablement signal based on the biometric authentication, the first authentication information, and the second authentication information." *Id.* at 1356-57. The Federal Circuit held that "the claimed invention merely combine[d] conventional authentication techniques—first authentication information, a biometric authentication indicator, and a time-varying value—to achieve an expected cumulative higher degree of authentication integrity." *Id.* at 1357. "Without some unexpected result or improvement, the claimed idea of using three or more conventional authentication techniques to achieve a higher degree of security [was] abstract," as was "the idea of using two devices for authentication." *Id.*

That is just like the Asserted Claims here, which, as the representative '297 Patent makes clear, merely involve a conventional authentication technique—e.g., requesting a randomly generated code, generating the code, providing the code, and receiving the code to authenticate a user. The Asserted Claims fail to recite "some unexpected result or improvement" to the conventional technique; rather, they achieve, at most, the expected result of a "higher degree of authentication integrity." *Id.*

*Prism Techs., LLC v. T-Mobile, USA, Inc.*, 696 F. App'x 1014 (Fed. Cir. 2017), is similar. There, the Federal Circuit held that "the asserted claims [were] directed to the abstract idea of 'providing restricted access to resources.'" *Id.* at 1017. The claims "relate[d] to systems and methods that control access to protected computer resources by authenticating identity data, i.e., unique identifying information of computer components." *Id.* at 1016. The process recited by the claims required: "(1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources." *Id.* at 1017. The Asserted Claims here are just like the claims in *Prism* and are similarly directed to an abstract idea. For example, the claims of the representative '297 Patent require a process that is just like that of the *Prism* claims: authenticating a user or a device after confirming the identity of that user or device. Like *Prism*, the Asserted Claims are directed to an abstract idea.

In *StrikeForce Technologies, Inc. v. SecureAuth Corp.*, No. LA CV-17-04314 JAK (SKx), 2017 WL 8808122 (C.D. Cal. Dec. 1, 2017), *aff'd*, 753 F. App'x 914 (Fed. Cir. 2019), the district court determined that the asserted claims "address[ed] an 'abstract idea of providing restricted access to resources,'" just "like those at issue in *Prism*." *Id.* at *6. The Federal Circuit affirmed

the district court's judgment. *StrikeForce*, 753 F. App'x at 914. The representative claim in *StrikeForce* recited the steps of "receiving a first channel login identification demand"; "verifying the login identification"; "receiving at a security computer in a second channel the demand for access"; "outputting from the security computer a prompt requesting a transmission of data"; "receiving the transmitted data at the security computer"; "comparing the transmitted data to predetermined data"; and "compar[ing] the transmitted and the predetermined data" to decide whether to grant access. 2017 WL 8808122, at *3-4. The *StrikeForce* claims require the same type of steps required by the Asserted Claims here. *See supra* Section I.B.1(b). Like the claims in *StrikeForce*, the Asserted Claims are directed to an abstract idea.

Similarly, in *USAA*, the district court analyzed the claims of the '432 Patent, a family member of the Asserted Patents, and determined that the claims there were "directed to the abstract idea of using a third party and a random, time-sensitive code to confirm the identity of a participant to a transaction." 2016 WL 3670804, at *4. While acknowledging that its "formulation [of the abstract idea was] admittedly verbose," it explained that "the patent claims combine[d] two abstract ideas: the use of a third party intermediary to confirm the identity of a participant to a transaction and the use of a temporary code to confirm the identity of a participant to a transaction." *Id.* That combination of abstract ideas did "nothing" to "remove[] the patent claims from the realm of the abstract." *Id.* As discussed *supra*, the claims of the '432 Patent are materially identical to the Asserted Claims. *Supra* I.A.1. Consistent with the *USAA* decision, the claims of the Asserted Claims fall squarely into the category of abstract ideas that are unpatentable under Section.

There are many additional examples of district courts finding that claims involving similar authentication technologies are directed to abstract ideas. *GoDaddy.com LLC v. RPost Commc'ns Ltd.*, No. CV-14-00126-PHX-JAT, 2016 WL 3165536, at *7 (D. Ariz. June 7, 2016), *aff'd*, 685 F.

App'x 992 (Fed. Cir. 2017) (finding ineligible authentication using third-party intermediary); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011) (finding ineligible authentication based on past transaction and internet address). This case is no different.

*       *       *

The intrinsic evidence of the Asserted Claims and precedent analyzing similar claims establishes that the claims are directed to the abstract idea of using (i) a third party and (ii) a single-use, time-sensitive code to confirm the identity of a party to authenticate a transaction.

### 2.    The Asserted Claims do not contain an inventive concept

The Asserted Patents fare no better at step two of the *Alice* analysis. *Alice* step two "consider[s] the claim elements individually and as an ordered combination to assess whether they "transform the nature of the claim into a patent-eligible application of the abstract idea.'" *AI Visualize*, 97 F.4th at 1379. To survive this step, "a claim must recite something 'significantly more' than the abstract idea itself." *Id.* The claim "cannot rest on the patent-ineligible concept alone" or be made eligible by "claim elements that are routine, conventional, or well-known." *Id.* A "patentee that emphasizes a claim's use of certain technology, for example, a general-purpose computer, fails at step two when the intrinsic record establishes that the technology is conventional or well-known in the art." *Id.* at 1380. Indeed, if the "specification provides that technology [in the claim elements] existed at the time of the invention," that precludes transforming the abstract idea into something patent eligible. *Id.*

Here, the claims of the representative '297 Patent are comprised of generic computer functions, and neither the claims nor the specification show a technological improvement. Instead,

the limitations can be implemented using conventional computer elements.[7]

Each of the individual claim elements recite only the high-level steps that describe the abstract idea and implement those steps on components that are standard and well-known. The representative '297 Patent explains that the claims merely utilize the functionality of existing technology and well-known, routine, and conventional components to perform the claimed functions. Indeed, it emphasizes that its purported invention is "*simple for businesses to adopt*" because it "*doesn't require the financial institutions to change their existing systems*." '297 Patent at 2:10-12. And that the claimed transactions are performed "through a *standard interface*" that is "*similar to what exists today*." *Id.* at 5:23-25. That is not enough. *See AI Visualize*, 97 F.4th at 1380.

The remaining elements of claim 1 of the representative '297 Patent merely specify parameters for an authentication code—that the code is invalid after a predetermined time and a single use and only valid for authenticating the user. And neither the claims nor the specification explain how these parameters add "significantly more" to the abstract idea. *Alice*, 573 U.S. at 218. Instead, the specification acknowledges that the prior art "provide[d] for remote authentication using a one-time password scheme." '297 Patent at 1:51-56.

The dependent claims likewise do not provide an inventive concept. The specification does not explain how any of the functionalities or parameters described in the dependent claims somehow solves a technical problem or improves the functioning of computers. *See Secured Mail*

---

[7] During oral argument of the *USAA* appeal, one judge flagged then-pending '432 patent family members—comprising a subset of the Asserted Patents–and questioned, "are they all about third-party authentication?" (Oral Argument at 00:08:38-00:08:50, *USAA*, 737 F. App'x 542 (Fed. Cir. 2018) (2016-2415), https://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-2415.mp3), "aren't they all going to be invalidated under 101 anyway?" *Id.* at 00:34:01-11. Then a different judge questioned, "How the heck are they going to get those issued?" *Id.* at 00:34:15-24.

*Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911–12 (Fed. Cir. 2017) ("The claim language does not provide any specific showing of what is inventive about the identifier or about the technology used to generate and process it. The district court is correct that the sender-generated identifier is not a sufficiently inventive concept.").

The same is true when considering the claim elements as an ordered combination. The claims "use[] a conventional ordering of steps"—receiving a request, generating a response, providing that response, and receiving the response—"with conventional technology to achieve its desired result." *Two-Way*, 874 F.3d 1339. As just discussed, the patent itself explains that it uses existing technology to perform these steps. Indeed, it emphasizes that its system "***doesn't require the financial institutions to change their existing systems***" to implement the invention, and that the steps are performed "through a ***standard interface***" that is "***similar to what exists today***." '297 Patent at 2:10-12, 5:23-25.

This is consistent with *USAA*. Analyzing the substantially identical claims at issue in that case, the District Court explained:

> Taken individually, each of these claim elements describes conventional computer functions. The claim elements describe sending data electronically, generating a random code, and comparing two pieces of data to see if they are the same. As in *Alice*, "each step does no more than require a generic computer to perform generic computer functions." 134 S. Ct. at 2360.
>
> Considered as an ordered combination, the claim elements do not add anything inventive to the abstract concept underlying them. They simply instruct a generic computer or computers to verify the identity of a participant to a transaction using a randomly generated code. They do not "purport to improve the functioning of the computer itself." *Id.* "Nor do they effect an improvement in any other technology or technological field." *Id.* They have generic computers perform an old method of authentication. This is not enough to transform a patent-ineligible abstract idea into a patent-eligible invention. *See id.* at 2360.
>
> Put simply, there is nothing inventive about Plaintiffs' patent claims.

*Id.* at *5-6.

In short, the '297 Patent "does not specify how the claimed configuration for [authentication] is any different than generic [authentication processes]," the system "as claimed is not an inventive concept that transforms [the claim] into a patent-eligible invention." *Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 2022-1932, 2024 WL 371959, at *6 (Fed. Cir. Feb. 1, 2024). "[W]here '[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information,' there is no inventive concept." Dkt. 30 at 15, *RFC Lenders of Tex., LLC*, No. 6:23-cv-00832-XR. The Asserted Claims fail *Alice* step two.

### 3.     The Asserted Patents raise significant preemption concerns

Plaintiff's Complaint shows the breadth of the claims, highlighting significant preemption concerns common with patent-ineligible claims. Indeed, Plaintiff's infringement allegations are so broad as to potentially consume the entirety of all two-factor authentication technologies that use temporary codes. *See* Dkt. 1, Exs. G-N. The Supreme Court has held that a patent is invalid under Section 101 where, as here, "[u]pholding the patent would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea." *Alice*, 573 U.S. at 216. The *USAA* Court recognized these preemption concerns, explaining that, "[t]o allow Plaintiffs to patent a generic computer implementation of an abstract idea would allow Plaintiffs to monopolize the idea itself and inhibit further discovery and invention." *USAA*, 2016 WL 3670804, at *6.

*     *     *

"In the end, [the Asserted Claims] amount to nothing more than the practice of an abstract idea using conventional … computer equipment." *Beteiro*, 104 F.4th at 1359. The claims are patent ineligible.

### C.     The Dependent Claims Do Not Change the Analysis

The dependent claims do not change the collateral-estoppel analysis or transform the

Asserted Claims into patent-eligible subject matter.

| Asserted Patents' Dependent Claims | Claims With Corresponding Subject Matter Held Invalid in the '432 Patent |
|---|---|
| '285 Patent cls. 2-5, 11, 17-20, 24<br>'864 Patent cls. 4, 5, 11, 12<br>'129 Patent cls. 7, 14, 23, 31, 37, 45, 49<br>'938 Patent cls. 6, 7, 9, 10, 15, 20, 21, 26<br>'864 Patent cls. 4, 5, 11, 12<br>'297 Patent cls. 8, 9, 17, 18, 24 | '432 Patent cl. 3 |
| '285 Patent cls. 6-8, 10, 21, 22, 29<br>'297 Patent cls. 5, 6, 14, 15, 21, 22<br>'453 Patent cls. 2, 3, 5, 12, 13, 15, 21<br>'938 Patent cls. 12, 23<br>'129 Patent cls. 5, 11, 18 | '432 Patent cl. 6 |
| '285 Patent cls. 9, 23<br>'297 Patent cl. 25<br>'453 Patent cls. 5, 9, 23 | '432 Patent cl. 41 |
| '285 Patent cls. 12, 14, 25, 26, 28 | '432 Patent cl. 34 |
| '285 Patent cls. 13, 15, 27, 30<br>'297 Patent cls. 20, 29<br>'864 Patent cls. 6, 7, 9, 14, 15<br>'938 Patent cls. 2, 13, 24<br>'129 Patent cls. 2, 9, 16<br>'864 Patent cls. 3, 9, 10 | '432 Patent cl. 2 |
| '297 Patent cls. 2, 11<br>'938 Patent cls. 4, 19<br>'129 Patent cls. 4, 10, 17<br>'129 Patent cl. 52<br>'864 Patent cls. 2, 13 | '432 Patent cl. 13 |
| '297 Patent cls. 3, 12 | '432 Patent cl. 22 |
| '297 Patent cls. 4, 7, 13, 16, 23, 26, 27<br>'453 Patent cls. 4, 6, 7, 10, 14, 16, 17, 24, 25 | '432 Patent cl. 34 |
| '453 Patent cls. 8, 20<br>'864 Patent cls. 6, 14 | '432 Patent cl. 40 |
| '453 Patent cls. 19, 22<br>'864 Patent cl. 3 | '432 Patent cl. 42 |
| '864 Patent cls. 2, 13<br>'938 Patent cls. 3, 5 | '432 Patent cl. 7 |
| '864 Patent cl. 10 | '432 Patent cls. 20, 21 |
| '938 Patent cls. 11, 14, 22, 25<br>'129 Patent cls. 12, 26 | '432 Patent cl. 8 |
| '938 Patent cl. 18 | '432 Patent cl. 18 |

| Asserted Patents' Dependent Claims | Claims With Corresponding Subject Matter Held Invalid in the '432 Patent |
|---|---|
| '129 Patent cls. 27, 34, 35, 40 | |
| '129 Patent cls. 3, 6, 22, 30, 43 | '432 Patent cl. 37 |
| '129 Patent cls. 13, 19, 20 | '432 Patent cl. 32 |
| '129 Patent cls. 21, 25, 29, 33, 44, 47, 48, 51, | '432 Patent cl. 36 |
| '129 Patent cls. 28, 36, 41 | '432 Patent cl. 14 |
| '129 Patent cl. 39 | '432 Patent cl. 11 |
| '864 Patent cls. 7, 15 | '432 Patent cl. 9 |

### D.   The Court Should Dismiss The Complaint With Prejudice Because Amendment Of The Complaint Is Futile

An amendment to a complaint " is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014).

No amendment can save Plaintiff's Complaint. The collateral estoppel and Section 101 analyses rest on the intrinsic record of the Asserted Patents. "No amendment to a complaint can alter what a patent itself states." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023). Any attempt to depart from the intrinsic record would be "'wholly divorced' from the claims [and] the specification," which "cannot defeat a motion to dismiss." *AI Visualize*, 97 F.4th at 1380. Plaintiff similarly cannot escape final judgment rendered in an earlier action via amendment to its Complaint. As this Court has previously held, when "claims are barred by … collateral estoppel," "granting … leave to amend would be futile." *Rodriguez v. JPMorgan Chase Bank, N.A.*, 2016 WL 4507388, at *5 (W.D. Tex. Aug. 26, 2016) (Rodriguez, J.).

\*      \*      \*

Plaintiff's Complaint should be dismissed because its claims are barred by collateral estoppel and because the Asserted Claims are directed to patent-ineligible subject matter under Section 101. In both cases, such dismissal should be with prejudice because any amendment to the Complaint would be futile.

## II.     AT A MINIMUM, THE INDIRECT AND WILLFUL INFRINGEMENT CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO PLEAD SPECIFIC FACTS THAT DEFENDANTS HAD PRE-EXPIRATION KNOWLEDGE

At a minimum, Plaintiff's allegations of indirect infringement (both induced and contributory infringement) and willful infringement should be dismissed because Plaintiff fails to plead specific facts that each of the Defendants had knowledge of the Asserted Patents or knowledge of infringement of the Asserted Patents prior to the expiration of the Asserted Patents.

"For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer [1] 'specifically intended [another party] to infringe [the patent] and [2] *knew that the [other party]'s acts constituted infringement*." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018). For contributory infringement, a patentee must allege that

> a party sells, or offers to sell, "a component of a patented … combination, … or material … for use in practicing a patented process, constituting a material part of the invention, *knowing the same to be especially made or especially adopted for use in an infringement* of such patent, and not a staple article or commodity of commerce suitable for noninfringing use."

*Id.* at 1356 (quoting 35 U.S.C. § 271(c)). And for willful infringement, "a complaint must allege facts demonstrating that the accused infringer: (1) *knew of the patent-in-suit*; (2) after acquiring that knowledge, infringed the patent; and (3) in doing so, *the alleged infringer knew, or should have known, that its conduct amounted to infringement of the patent*." *Network Sys. Techs., LLC v. Qualcomm Inc.*, No. 1:22-CV-01331, 2023 WL 11833572, at *14 (W.D. Tex. July 21, 2023). As these standards reveal, "[t]he knowledge requirement for willful patent infringement is the same as for indirect patent infringement." *Id.*

The Asserted Patents each expired on August 29, 2021. Plaintiff's claims of infringement cannot extend past that date. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) ("'[T]here can be no infringement once the patent expires,' because 'the rights flowing from

a patent exist only for the term of the patent.'"). And critically, Plaintiff fails to allege any facts that plausibly support that any Defendant had pre-expiration knowledge of the Asserted Patents, requiring dismissal of its indirect and willful infringement claims.

Plaintiff makes threadbare allegations of indirect and willful infringement. Its indirect infringement allegations simply regurgitate the language of the Patent Act. *E.g.*, Dkt. 1 ¶¶ 40, 156 (reciting 35 U.S.C. § 271(b)); *id* at ¶¶ 42, 157 (reciting 35 U.S.C. § 271(c)). And its allegations of willful infringement say nothing more than that each Defendant's "infringement has been willful since at least as early as it became aware of the Patents-in-Suit*." Id.* ¶¶ 49, 65, 82, 99, 131, 147, 162.

Such conclusory assertions are consistently found insufficient to establish knowledge of asserted patents. *E.g.*, *Kirsch Rsch. & Dev., LLC. v. Tarco Specialty Prods., Inc.*, No. 6:20-cv-00318-ADA, 2021 WL 4555802, at *2-3 (W.D. Tex. Oct. 4, 2021) (dismissing "Plaintiff's indirect and willful infringement claims" because they were "deficient" and "vague," and thus "fail[ed] to adequately plead Defendant's pre-expiration knowledge of the [asserted] patent"); *Affinity Labs of Tex., LLC v. Blackberry Ltd.*, No. W:13-CV-362, 2014 WL 12551207, at *2-5 (W.D. Tex. Apr. 30, 2014) (dismissing claims of induced infringement after finding "the complaint [was] devoid of any reference of actual intent or knowledge of induced infringement on the part of" defendant).

In short, the Complaint lacks any specific allegations that could plausibly establish knowledge of the Asserted Patents prior to their expiration or knowledge of infringement. The Court should dismiss the willful and indirect infringement allegations.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion to Dismiss under Rule 12(b)(6) and dismiss Plaintiff's complaint for failure to state a claim.

Dated: October 31, 2024         Respectfully submitted,

/s/ *Steven D. Moore*
Steven D. Moore
California Bar No. 290875
**KILPATRICK TOWNSEND & STOCKTON LLP**
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Tel: (415) 576-0200
Fax: (415) 576-0300
smoore@ktslaw.com

Steve R. Borgman
Texas Bar No. 02670300
**KILPATRICK TOWNSEND & STOCKTON LLP**
700 Louisiana Street, Suite 4300
Houston, Texas 77002
Tel: (281) 809-4081
Fax: (281) 990-6826
sborgman@ktslaw.com

*Attorney for Defendant Early Warning Services, LLC*

/s/ *Zachary M. Briers*
Zachary M. Briers (admitted to practice in this District)
zachary.briers@mto.com
Heather E. Takahashi (admitted to practice in this District)
heather.takahashi@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Fax: (213) 687-3702

*Attorneys for Defendant Bank of America Corporation*

/s/ *Charles E. Phillps*
Charles E. Phipps, Texas State Bar No. 00794457
cphipps@lockelord.com
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
(214) 740-8000 Telephone
(214) 740-8800 Facsimile

Robert A. Angle (admitted pro hac vice)
robert.angle@troutman.com
Christopher J. Forstner (admitted pro hac vice)
chris.forstner@troutman.com
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
1001 Haxall Point
Richmond, VA  23219
Telephone:  (804) 697-1468
Facsimile:  (804) 697-1339

*Counsel for Defendant Capital One Financial Corporation*

/s/ *Rita J. Yoon*
Rita J. Yoon (admitted *pro hac vice*)
Illinois Bar No. 6298019
Email:  ryoon@jonesday.com
**JONES DAY**
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 626-3939
(415) 875-5700 Facsimile

H. Albert Liou
Texas Bar No. 24061608
Email:  aliou@jonesday.com
**JONES DAY**
717 Texas Avenue, Suite 3300
Houston, TX  77002
(832) 239-3939
(832) 239-3600 Facsimile

I. Sasha Mayergoyz (admitted *pro hac vice*)
Illinois Bar No. 6271800
Email: smayergoyz@jonesday.com
**JONES DAY**
110 N. Wacker Dr., Suite 4800
Chicago, IL 60606
(312) 782-3939
(312) 782-8585 (Facsimile)

John R. Boulé III (*pro hac vice* pending)
California Bar No. 322929
Email:  jboule@jonesday.com
**JONES DAY**
555 S. Flower St., 50th Fl.
Los Angeles, CA 90071
(213) 489-3939
(213) 243-2539 (Facsimile)

*Attorneys for Defendant JPMorgan Chase & Co*

/s/ *Kent E. Baldauf, Jr.*
Kent E. Baldauf, Jr. (admitted in WDTX)
PA ID No. 70793
Bryan P. Clark (admitted in WDTX)
PA ID No. 205708
**THE WEBB LAW FIRM**
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
412.471.8815
412.471.4094 (fax)
kbaldaufjr@webblaw.com
bclark@webblaw.com

*Attorneys for Defendant The PNC Financial
Services Group, Inc.*

/s/ *Michael S. Conner*
Michael S. Connor, NC State Bar 16152
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC  28203-6818
Telephone:  (704) 444-1022
Facsimile:  704-444-1111
Mike.Connor@alston.com

Jacob Young, Texas State Bar 24131943
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue
Suite 2300
Dallas, TX 75201
Telephone:  (214) 922-3443
Facsimile:  (214) 922-3899
Jacob.Young@alston.com

Brady Cox, Texas State Bar 24074084
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue
Suite 2300
Dallas, TX 75201
Telephone:  (214) 922-3471
Facsimile:  (214) 922-3899
Brady.Cox@alston.com

*Attorneys for Defendant Truist Financial Corporation*


/s/ *Max Ciccarelli*
Max Ciccarelli
Texas State Bar. No. 00787242
**CICCARELLI LAW FIRM**
100 N. 6th Street, Suite 502
Waco, Texas 76701
Tel: 214.444.8869
Max@CiccarelliLawFirm.com

Paige Stradley (admitted *pro hac vice*)
Rachel Zimmerman Scobie (admitted *pro hac vice*)
**MERCHANT & GOULD P.C.**
150 S. Fifth Street, Suite 2200
Minneapolis, MN 55402
pstradley@merchantgould.com
rscobie@merchantgould.com

*Attorneys for Defendant U.S. Bancorp*

/s/ *Vincent J. Galluzzo*
Vincent J. Galluzzo
vincent.galluzzo@klgates.com
**K&L GATES LLP**

300 South Tryon Street, Suite 1000
Charlotte, NC 28202
Tel: (704) 331-7400

Matthew Blair SBN 24109648
matthew.blair@klgates.com
**K&L GATES LLP**
2801 Via Fortuna, Suite 650
Austin, TX 78746
(512) 482-6851

Erik J. Halverson (*admitted pro hac vice*)
erik.halverson@klgates.com
**K&L GATES LLP**
4 Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel: (415) 882-8200
Fax: (415) 882-8220

Devon C. Beane (*admitted pro hac vice*)
devon.beane@klgates.com
Jonah B. Heemstra (*admitted pro hac vice*)
jonah.heemstra@klgates.com
Nathan J. Fuller (*admitted pro hac vice*)
nathan.fuller@klgates.com
A. Rebekah Hill (*admitted pro hac vice*)
rebekah.hill@klgates.com
**K&L GATES LLP**
70 West Madison Street, Suite 3100
Chicago, IL 60602
Tel: (312) 372-1121
Fax: (312) 827-8000

*Attorneys for Defendant Wells Fargo & Company*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on October 31, 2024, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Steven D. Moore*
Steven D. Moore
